The next case on our call is Agenda Number 9, Number 128123, People, the State of Illinois v. Andrew Ramirez. Counselor to the Appellant, are you prepared to proceed? Yes, Your Honor. Good morning, Your Honors. Good morning, Your Honor. Counsel. May it please the Court. I'm Assistant Appellant Defender Matthew Daniels, and I represent the Appellant, Andrew Ramirez. Your Honors, Andrew Ramirez was convicted of possession of a defaced firearm. That conviction should not stand for two reasons. First, both the trial court and the appellate court misinterpreted the possession of a defaced firearm statute. Contrary to the lower courts, the state had to prove that Andrew knew that the firearm he possessed was defaced. Alternatively, this court should not let this conviction stand because under Bruin, possession of a defaced firearm violates the Second Amendment. Turning to my first point, that's the statutory construction argument. Section 245B must require knowledge of defacement, and that's the case for two overarching reasons. One is the mental state requirements, and the other is the principle of constitutional avoidance. I'd like to first discuss the mental state requirements. The default rule under Illinois law is that every element of an offense gets a mental state. That is Section 4-3B of the Criminal Code. And here before this Court, the parties are in agreement that defacement is an element of the offense. Therefore, applying 4-3B, the defacement element should require a mens rea. And here it should be an implied mens rea of knowledge. And that makes sense when we think about not just the fact that there is statutory authority that compels that result, but also the underlying reason for that statute in the first place, which is that a mens rea separates innocent conduct from criminal conduct. And that's a real concern in this particular offense, because if I am in possession of a firearm and I don't know that the firearm was defaced, my possession is innocent conduct. Nevertheless, under the interpretation that the State proposes and which the appellate court has adopted, even if I was not aware of the fact that the firearm I possessed was defaced, I would still be subject to prosecution, conviction, and being a felon, which would have a host of collateral consequences, which would flow from there. Sotomayor, isn't the way the appellate court here interpreted the statute consistent with other cases since 2009? In other words, hasn't the legislature acquiesced to that, the reading of the statute as all these other cases have read it? I disagree, Your Honor, for a couple of reasons. The legislative acquiescence canon certainly can be invoked in some circumstances. It's not appropriate here. The most important reason comes back to the importance of the mental state requirements. As I said, 43B has that default rule. If we also look at Section 1-2B of the criminal code, Section 1-2 speaks in overarching terms about why we have a criminal code in the first place. And in 1. or 1-2B, one of those enumerated purposes is to limit the condemnation of conduct as criminal when it is without fault. So we have that overarching framework. I recognize that legislative acquiescence can still be used sometimes as a canon of interpretation. It's not persuasive here, though, against that larger backdrop. Additionally, this Court has never actually interpreted the statute. And the legislative acquiescence canon has its greatest weight when this Court has authoritatively interpreted the statute and the legislature has not responded. That's not the case here. And even though there have been multiple appellate court decisions, I acknowledge that, what is also true is that there have been probably thousands of appellate court cases that have also been decided in that time period, and we can't expect the legislature to have kept track of every single decision. So for those reasons coupled together, abiding by the mental state requirement here is the more reasonable outcome, particularly when we consider the consequences that are at stake. This is not an offense where if you are in violation, there is minimal – it's not a petty offense, for instance. You're going to be a convicted felon, and those collateral consequences will stay with you for life. So that, in a nutshell, is the reason why the mental state requirement should not get overlooked when this Court interprets the statute. And it's one of the primary reasons why that requiring knowledge for the defacement element is appropriate here. Even if we were to do that, would it make any difference in this particular case? It would, Your Honor. We raised a sufficiency of the evidence argument. We also raised a trial error argument. We contend that under either of those two issues that Andrew would be entitled to relief. Isn't it pretty obvious that there was a large silver-scratched area on the gun? Right where its identifying marks would be? I agree that there is a silver scratch on the frame of the firearm. What the State's evidence did not include was any testimony from Officer Belanos, the recovering officer, about where a serial number would be on the Benelli shotgun and where specifically he had identified the defacement. And we would say that that piece of information was necessary in order for the State to sustain its burden. Alternatively, if this Court disagrees, relief would still be required here in Andrew's favor because the trial courts specifically said this was a bench trial. And the trial courts specifically said in reaching its verdict that the State wasn't under any obligation to show that knowledge that Andrew knew of the firearms defacement. So in this case, the judge misinterpreted the law, and that's akin to what we see in the instructional error context where the fact-finder is misapplying the law on a necessary element of the offense. And so in that case, there was still an error that's reversible error, and it was not harmless because the evidence regarding this element was not overwhelming. That would be the reason why Andrew would still be entitled to relief. Now, the other basis for requiring a knowledge requirement for the defacement elements is rooted in the principle of constitutional avoidance. Ginsburg. Could I just add that? Yes, Your Honor. On the statutory interpretation. We look at the plain language of the statute, the intent of the legislature. As we know, the way that the language is framed, the idea of knowledge is only used once, you know, knowingly possess a weapon that has been disposed. In other words, the plain language has only this one idea of knowledge. Does it not? It does not, Your Honor. This statute has no mens rea in 245B at all. It's – there is an implied mens rea of knowledge. The Stanley line of cases from the appellate courts interpreted the statute to require a knowledge mens rea because the courts concluded that the legislature did not intend to make this an absolute liability offense. That is one holding from Stanley with which we agree. And I believe that both parties agree here. So this is not a situation where we're simply asking what elements does a mens rea that's in the text modify. Here what we're dealing with is a situation where we have no mens rea and we're asking what elements does the implied mens rea modify. Counsel, I'm still struggling with this. It seems that the language of the statute is pretty straightforward. So the state had to prove, one, that the defendant knowingly possessed the firearm, not that it was defaced, but knowingly possessed the firearm, and that the firearm's serial number or identifying mark was obliterated. Those are the two things that the state had to prove. Where does it say that the defendant had to know that the mark, that the firearm's identification number was obliterated? It doesn't say that anywhere. It doesn't say that. But again, as I was just answering the Chief Justice's question, the knowledge mens rea for the possession element is also implied. This 24.5b is not a statute where the text itself has any mens rea whatsoever. So I agree with you, Your Honor, that the possession element requires knowledge. What I'm also saying is that the defaced status of the weapon, that also requires that implied mens rea of knowledge. And again, that's based off of the mental state requirement that is a hallmark of the criminal law. It's rooted in 4.3b, which sets the default rules when we need to have some sort of gap filler, and also 1-2b, which speaks to the larger overarching general purpose of limiting the possibility of someone being convicted of a crime for innocent acts. So that was the mental state requirement. Regarding the constitutional avoidance principle. Yes, Your Honor. In your view, how would the State prove knowledge that the weapon was defaced? Your Honor, circumstantial evidence would certainly be appropriate here. I recognize that it may be difficult in many circumstances to rely simply on direct evidence, but that is no different than the situation that the prosecution finds itself in with other possessory offenses, where relying on circumstantial evidence is both appropriate and frequently necessary. The same would be true here for having to prove the mens rea components regarding the defacements. If the State was able to prove possession of a weapon and the weapon had markings on it, scratched out, would that be sufficient? It could be in some circumstances. There may be additional information that would be necessary that speak to why the context in which the possessor had the firearm. So let's say for the... I'm sorry. I don't understand that. If we're just talking about knowledge... Yes, Your Honor. ...let's assume the facts are clearly this defendant, a defendant, is in possession of this weapon, and visually one can see that it has been defaced. Would that be sufficient to prove that element? If it's been obliterated and it's visible, that could very well be sufficient. I recognize that. But keep in mind that it may not always be the situation for a firearm to be defaced under the statute. Someone... And we speak about this in the opening brief in particular, that one of the challenges here with firearms and serial numbers is that there's no standardization or uniformity between manufacturers about what a serial number looks like or even where it's located on the firearm. So it requires a certain level of expertise, and that increases the risk of innocent mistakes. So if you're a novice firearm owner, you may have a higher risk of having yourself in a situation where you unknowingly are in possession of a firearm that's defaced if it's not just obliterated. Even if you're... If you have some expertise, we cited a publication from the Michigan State Police for their own law enforcement officers for being able to identify serial numbers on handguns precisely for the reason that there are so many different markings and there is so much variation between manufacturers that it's a more complicated and sophisticated task than at first glance. So considering that context as a practical matter, it's quite possible that someone could be in possession of a firearm. They may not recognize for a variety of reasons that the firearm qualifies as having a defaced characteristic the way 24.5b defines defacement. It can either be changed, altered, removed, or obliterated. So there are four different types of ways a firearm could be defaced. So someone could have a firearm, not recognize it qualifies as defaced, and there could be an innocent explanation. So we shouldn't... A serial number could have an innocent explanation? Sure, it could. Let's say, for instance, I have a godparent who's been a firearm owner for... He's collected firearms for most of his adult life. He and his wife are moving out of Illinois to downsize to someplace in Florida. He's giving away a lot of his property, possessions, because he just has less space because he's moving away. I'm his godson. He gives me a bunch of his firearms as a gift. I get them in a box and I put them in the attic, and I don't really look at them because while, you know, I'm legally permitted to own firearms, I don't really have a need for using the firearms. At some point, I may discover in going through the box that that firearm, one of those firearms has got a serial number that's scratched off. So now what do I do? Technically speaking... You want to talk about the Constitution. Let's talk about Heller and other cases. Didn't Heller itself say the Second Amendment does not cover weapons, not typically possessed for law-abiding citizens for lawful purposes? So Heller itself raises an issue that there are some types of weapons that are not covered by the Second Amendment. You seem to be suggesting that possession of that type of weapon would not be a crime because I'm not sure exactly why, but that's what you seem to be arguing. Our argument is if this Court decides to address the constitutional issue, that applying the new Bruins test, the two-step test, that the state has not met its burden of proving that the statute is unconstitutional. So the first step of the analysis is to ask whether the plain text of the Second Amendment covers the regulated conduct. Well, then could you respond to how Heller talks about there are some weapons recognized that there are some weapons that are not covered by the Second Amendment? That's true. And so the short answer to your question, Your Honor, is that not every weapon that has its markings defaced is necessarily a – it's not akin to the short-barreled shotgun, which is the classic example that Heller relies upon to say that there are certain classes of firearms that are, per se, illegal. There's a qualitative difference between, say, a short-barreled shotgun, which still has – when it's been modified to take off most of the long gun's barrel, to have additional danger when operated, to have indiscriminate impact in terms of the shot going out wider. The – when you actually operate a – say, a handgun that's been defaced, it's no more or less dangerous than when it was marked. So in that sense, this is not one of those situations where even under Heller or the greater cases that there's an exception and the Bruin analysis doesn't apply here. There have been cases, certainly, that have talked about defaced weapons. The case from the Third Circuit, U.S. v. Mazzarella, saying there is no law abiding purpose. Rather, the only purpose in having a defaced weapon is to protect people – to hide the nature of the gun for persons involved in illicit activity. There's – in other words, one can defend oneself with a weapon that is not defaced. But if it's defaced, that – the idea is the only reason why it would be defaced is because it's going to be used in illicit activity. Why else would it be defaced? And therefore, the argument is, from at least some of these cases, it falls within the exception that Heller's done. Sure. In the limited time I have, Your Honor, let me try and unpack that as quickly as I can. First of all, regarding Mazzarella, keep in mind it's a pre-Bruin case, and that relies on the means-ends analysis. It is no longer part of Second Amendment challenges. What it does is take this kind of weapon outside of the Second Amendment completely. That I disagree about. But if – and so in that respect, my position would still be that we still – it doesn't take it out right away that the plain text of the Second Amendment covers possession of a firearm, which is what 24.5b does, and that moving on to the second step, that the State here hasn't shown that there is a relevantly similar historical analog at the time. But Heller says – I know Heller is pre-Bruin, but Heller says the Second Amendment doesn't cover weapons not typically possessed by law-abiding citizens for lawful purposes. So don't we have to decide whether or not a defaced weapon falls within Heller's definition of what is outside the Second Amendment? Does Bruin change that somehow? No, but the way in which the analysis takes place is a little different. And that's where the text history and tradition test that replaces the test that the Circuit Courts of Appeal had been using is a little different. But – and I think what you're getting to, Your Honor, and I want to get to that is – I'll allow you to answer my question. Sure. That with respect to – it's true that a defaced firearm is defaced a lot of times because people want to avoid criminal detection. It's not the only situation, though, in which a firearm can get changed or altered in terms of its serial number. Wear and tear and other things could cause it to. And that's why the larger constitutional analysis is necessary. Thank you very much. Thank you, Your Honor. Thank you. Counsel, I'm Assistant Attorney General Katherine Snitzer on behalf of the people. Your Honors, this offense of possession of a defaced firearm has two elements. First, the knowing possession of a firearm, and second, that that firearm has been defaced. And in this case, the State met its burden by showing at trial that a defendant possessed a firearm which he purchased and kept under his mattress, and the party stipulated that that firearm had a defaced serial number. Now, the statute does not require proof that defendant knew of the defacement, and that's apparent both from the plain language and the purpose of this statute. So looking first at the plain language, Section 245B only provides an implied mental state for possession. Knowledge is part of the definition of possession, and it doesn't include a mental state for the defacement. And that's next to Subsection A. You look at the two sections of this statute together. Section A does specifically require knowledge or intent to deface a firearm, and Section B has no knowledge or intent required for the defacement element where you possess a firearm. Counsel, as your opponent talked about mens rea being that there's a default provision in the Code that there should be a mens rea requirement because of the overarching purpose of the Code and the default provision. What's your response to that? That is certainly the default. However, in this case, we don't need to look at the default because we look at this specific statute indicates that the legislature did not intend a mens rea for that element in this statute. So the default is there when we can't tell the intent of the legislature from the statute, but where there's a specific intent in the statute, that is the legislature's intent for that offense is what's controlling. And as I said, you look at the two sections next to each other where the legislature has used mens rea language for one section, and then the next section uses different language that shows that they're not intending to require knowledge. And those two sections have different penalties. So Section A has a greater mental state required, and so it's a Class 2 felony. It's a higher level of offense versus the Class 3 felony where there is a lesser knowledge requirement. And this is also different from other possessory offenses where the legislature has specifically required knowledge. For example, for possession of a stolen firearm, the legislature requires specifically requires knowledge that the weapon is stolen. Or possession of a vehicle with a defaced VIN number, there again, this legislature specifically requires knowledge that that VIN number has been defaced. And it certainly could have used that similar language had it intended to require knowledge in this offense. Additionally, at the time this statute was passed with this language, the appellate court had interpreted the sawed-off shotgun statute, which has similar language, as not requiring proof of knowledge of the length of the shotgun barrel. And so when the... Counsel, so this would be an absolute liability offense, that if you possess it, it's defaced, you are liable, whether you knew it or not. Well, we wouldn't consider it an absolute liability offense because an absolute liability offense is an offense that has no mental state. And this offense does have a mental state for possession of a firearm. So you have to know about the possession of a firearm. You just don't have to know about the defacement. So it's the defacement that makes it illegal, not the possession of a firearm. Correct. If the state still has to prove the defacement, that's certainly an element of the offense. But there's no mental state attached to that element. And that is, again, like the sawed-off shotgun statute, the purpose of the legislature is directed at the danger of the item itself, so not just the possession. But this could apply to any type of weapon, even those that have not been historically considered to be dangerous or not the type that the general law-abiding public would possess. Correct? Well, with respect to a defaced firearm, we don't believe that it's covered by the Second Amendment because there is no lawful purpose to having a gun with a defaced serial number. That doesn't serve any lawful purpose. There's no benefit for hunting or self-defense or any lawful purpose. But is there any requirement that anybody with a shotgun or, you know, that they have to register that anywhere? I mean, you know, the purpose of having the identification number for that kind of thing. I mean, you know, if it just wore off over time, are you required to turn it in? The purpose, I understand, but by making this strict liability, it applies to every kind of weapon, whether or not it's considered to be something that's not generally possessed for a lawful purpose. It is true that it applies to every firearm. In terms of the purpose, I think there's no, to my knowledge, registration requirement for firearms generally, but the purpose of a serial number, it's not just for registration purposes. It's also, let's say a weapon is used in a crime and the police have found it. They usually use the serial numbers to track sales and to identify the owner. So you could have a case where a gun owner has a defaced serial number and has a gun with a defaced serial number, and they may not do anything unlawful with the gun, but they give it away, they sell it, and the next owner uses it in a crime and the police find it. It will be much more difficult for them to trace that gun to its ultimate owner because they can't track that gun without a serial number. So it's not simply for registration purposes. It's most frequently used by law enforcement for tracking purposes, and so that way you can identify a gun that's been stolen  And that's the reason why the danger to the public is not simply what the owner intends to do with it, but whether or not this weapon is traceable, because that's the purpose of the serial number, is for it to be traceable, identifiable by law enforcement, and that's why we require these serial numbers. Can I ask you about the nature of the defacement in this particular case? It was scratched out, but was it open and obvious? What was the nature of this case? Yes, so this wasn't a focus of the trial, but because the party stipulated that this gun was defaced. I think the reason that they stipulated it is because it was quite obvious. The testimony of the officer was that it was scratched, and so he could not see a serial number. And then the state also introduced the police body cam video, and when the officer picks up the gun, he examines it, and he says this one is defaced, and as he's saying that you can see a large silver scratch mark. So it's obvious from the context of the video that it's been scratched out and removed. And I think the obviousness of this is fairly typical, serial numbers generally are either engraved or stamped into the weapon. They're not, and Federal law requires that they not be easily obliterated. So manufacturers are required to place these. I think it's highly unlikely that they would be accidentally removed. In this case in particular, it's a substantial scratch. It clearly required a great deal of effort to remove that serial number. So doesn't that really sort of weigh against your argument that there shouldn't be a knowledge requirement? I mean, you look at the language of the statute. It doesn't talk about just a person who knowingly possesses any type of firearm. It's a specific type of firearm that has to be possessed in order to be the felonious action, right? Correct. The state could not obtain a conviction if the weapon was not defaced. But the knowledge requirement is talking about possession, and it doesn't have the knowledge or intent that is required for someone who actually defaces a firearm. So, again, the contrast between Section A of the statute and Section B, and with other statutes where the legislature will typically say something like with knowledge that it's blatantly obliterated or something to that effect. Now, turning to Petitioner's or, excuse me, Defendant's constitutional avoidance argument, we don't believe there's any constitutional avoidance necessary here because there is no constitutional right to possess a defaced firearm. As my opposing counsel said, there's two steps in the Bruin analysis. The first is whether the weapon is covered. And Heller defines arms as those weapons that are typically possessed by law-abiding citizens for lawful purposes. There's quite simply no lawful purpose to a defaced firearm that isn't served equally well by a firearm with a serial number. And they're also not typically possessed by law-abiding citizens. If you were to go into a licensed gun dealership, gun seller, they would not be able to sell you a gun without a serial number. Any manufacturer or importer of weapons in this country has to have a serial number on that gun. So they're not typical of guns that are owned by law-abiding citizens. And even if this were protected conduct, it is consistent with the nation's tradition of firearms regulation. This is a modern method of doing something that states have done since the colonial period, which is track and register and identify firearms. We had cited a colonial Virginia law that required registration of all guns coming into the colony. Connecticut required registration of firearms. There's examples of musters and requiring citizens to register their firearms, present them for inspection, as well as states taxing firearms. So all of these examples show that at the time the Second Amendment was adopted, the states were identifying and tracking firearms. Now, it's true that serial numbers were not around at that time. They're a product of mass manufacturing. But that said, it is a modern method of doing something that the states have done for a very long time. And it's also a minimal burden on gun owners or gun possessors. It is significantly less of a burden than the requirement to get a FOID card from the state, which the Supreme Court approved of in Bruin, where it's a shallow-issue state like Illinois. And it really just requires that gun possessors be familiar with the characteristics of the firearm. And I think that this is an external characteristic. You don't have to use the firearm to know whether there's a serial number. You just have to look at it. It's on the outside of the firearm. It doesn't require a great deal of effort on the part of the gun possessor to be familiar with the firearm, and that is a reasonable expectation for the state to impose on people who possess those firearms. Finally, opposing counsel made a point that it's no more dangerous to have a defaced firearm. And that is contrary to the legislative purpose here. The legislative purpose is that these guns are dangerous because they are untrackable, they're untraceable, they frustrate the ability of law enforcement to do its job and to trace these firearms if they're used in a crime or traded unlawfully. So it is certainly a different danger than some of the other cases, but it is still a danger to public safety, and that's why the legislature has this law in place. Finally, if there are no further questions, we would ask you to affirm this conviction for the reasons stated here and in our brief. Thank you. Thank you very much. Your Honors, I wanted to make a couple of points regarding our statutory construction argument. First off, I want to return to a question, Justice Rochford, that you asked about whether the state's proposed construction creates an absolute liability offense. That's absolutely correct. It does, and that's simply because what separates innocent conduct from criminal conduct here is that defacement element. And so if there is no need for a mens rea for that necessary element to convert innocent conduct into criminal conduct, what we have as a practical matter is an absolute liability offense. And that is essentially an absurd result, because the state agrees that this is not an absolute liability offense, yet with the interpretation it's asking this court to adopt, that's precisely the result we'll have as a practical matter. Additionally, I believe Justice O'Brien had mentioned that there could be issues with things like wear and tear or, you know, that serial numbers are sometimes come off. And that's true. And that's one of the risks that this Court should take into consideration as a practical matter about why a mens rea here is necessary, is that there are ways that a serial number could end up having a defaced status when the possessor, after the possessor took control of that gun, when it was compliant with 24.5b. Another example that ---- Is there something in the record about that? I mean, do we know now? I don't know myself. Can they just be rubbed off? Can they just, you know, move it around a lot, the weapon around a lot? And suddenly it's just rubbed off? Yes. And here's what I would ask or I would suggest that Your Honor do. If you look at that field guide from the Michigan State Police, and you look at the photographs that are in that field guide, you'll notice that there are some of the serial numbers on some of those firearms which are starting to wear off. And it can get hard sometimes to tell whether a particular digit is, you know, a seven or if it was a slash, depending on how that manufacturer has their serial numbers. Another thing to keep in mind, contrary to what the State said a moment ago, not all serial numbers are engraved in. Sometimes there will be a metal plate that's attached. Where is this information coming from? Was this at the trial? This was not at the trial. This is information that's either coming from the field guide that I cited that this Court could take judicial notice of regarding the metal plate that I just mentioned. One of the cases that I cited in our opening brief is a case from Florida, KDT v. States. That was a situation where the State prosecuted a juvenile under Florida's version of its possession of defaced firearm statutes. There was an interpretive question the Court had to resolve there about whether there was a knowledge requirement for the defacement elements. They answered that question yes. And then in addressing the sufficiency of the evidence challenge, they pointed out that in that particular situation the State hadn't shown knowledge because the firearm had a metal plate that had the serial number on it, and it came off, and the evidence wasn't sufficient to prove. So there's both case law to look at as well as secondary authority. This Court can take judicial notice of. In this case, there was a stipulation to the defacement. Correct. Does that suggest that it was open and obvious that the defacement was something that was clearly evident? Maybe if there had been testimony from the officer that said that this is where I found the defacement on the firearm. That's the piece of the testimony that's missing. The stipulation itself does not identify what the defacing itself consisted of because it literally distracts the language. It says that the firearm was the serial number was changed, altered, removed, or obliterated. It was one of those four. It doesn't specify where on the firearm that the defacement was. And there was no testimony about where Officer Balanos knew to look and where he actually identified the defacement. So for that reason, we think that there is that missing piece in the State's proof and that the evidence was insufficient. If this Court disagrees, keep in mind, however, there's also that new trial issue that we've raised. Additionally, the State had, contrary to the State's assertion, this is not a public welfare offense because, as Justice O'Brien pointed out, there are a number of different sorts of weapons that fall under the ambit of 24.5b that we think of as being legal weapons. Think of handguns. That is, as Justice Scalia pointed out in Heller, I believe, is the quintessential self-defense weapon, which is clearly permissible to use. And so for that reason, this is not a public welfare offense. The other point I wanted to touch upon has to do with our constitutional avoidance argument. The one thing I do want to clarify is that that particular principle here applies not strictly because of a facial challenge to the Second Amendment. Keep in mind that when we filed our opening brief, Bruin hadn't been decided yet. Our brief was rooted strictly in statutory construction terms. When I'm speaking of constitutional avoidance here, this also falls under the constitutional principle of due process because we've got an interplay between the exercise of the fundamental rights and the possibility that someone is going to be finding themselves criminally punished for an innocent act in unknowingly straying into criminal conduct. One of the cases that we cite as an example of this principle in action in the constitutional context comes in the First Amendment realm, and that was in U.S. v. Excitement video. There, the defendant was convicted of transporting and receiving adult videos that had a performer who was underage. So that additional piece of the puzzle there, that there was an underage performer, was what transformed the conduct from being legal and constitutionally protected to being criminal conduct. And in Excitement video, the court held that that additional attendance circumstance element regarding the age of the performer required a mens rea to avoid any constitutional problems. And so when we're – I'm speaking of constitutional avoidance. It's not just that we've now got this facial challenge to the Second Amendment following Bruin. We also have a due process principle that's at play. Even if Bruin had never been decided and it was – or if this Court ultimately decides the Second Amendment issue and finds that the statute's constitutional, we still have to come back to interpreting the statutes and that other components of the constitutional interplay is a secondary basis for requiring knowledge that is in addition to the mental state requirements. Counsel, let me ask you a question. You stipulated to the fact that this weapon was defaced. You did not stipulate to the fact that he had knowledge of it, correct? That's correct, Your Honor. And that was an element that the State had to prove, and they didn't. So for that reason, we believe that Andrew is entitled to relief. It could be either an outright reversal for the State failing to provide sufficient elements – sufficient proof of each element beyond a reasonable doubt, or there is that trial error because we know that the judge said, I don't have to consider knowledge of defacement, and that was incorrect. So under either of those two pathways, Andrew is entitled to relief. And so for those reasons, if this Court doesn't have any other questions, we would ask that this Court reverse the judgments of the appellate courts. Thank you, Your Honors. Thank you, Counsel. Both sides. The agenda on this side is 1-2-3 of the State of Illinois v. Andrew Ramirez. We will take it under his name.